**Stanton R. Gallegos, OSB #160091**
StantonGallegos@MarkowitzHerbold.com
**Jermaine F. Brown, OSB #073415**
JermaineBrown@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085

**Neal J. Deckant** *
ndeckant@bursor.com
BURSOR & FISHER, P.A.
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455

*Attorneys for Plaintiff and the Putative Class*
*Additional Counsel on Signature Page*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

NAZZY HASSAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

ALBERTSONS COMPANIES, INC.

Defendant.

Case No. 3:24-cv-1562

**CLASS ACTION COMPLAINT FOR:**

**(1) VIOLATION OF OREGON'S UNLAWFUL TRADE PRACTICES ACT ("UTPA"), ORS 646.608(1)**

**(2) FRAUD**

**AND**

**(3) UNJUST ENRICHMENT / RESTITUTION**

**JURY TRIAL DEMANDED**

Plaintiff Nazzy Hassan ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Albertsons Companies, Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1. The market for alcoholic beverages is highly competitive, with many options for consumers to choose from. Defendant seeks to carve out a larger own share of this market by offering "perpetual sales" that never end on nearly every wine product it sells.

2. It is no secret that consumers actively seek out bargains and discounted items when making purchasing decisions. Retailers, including Defendant, are well aware of consumers' susceptibility to such perceived bargains. Products perceived by consumers to be discounted, however, are not always actual bargains. In an effort to give off the appearance of a bargain, Defendant intentionally misleads consumers as to the quality and value of the wines it sells (the "Products") through its deceptive sales tactics.

3. When consumers visit one of Defendant's Safeway and Albertsons brick and mortar locations or online stores, they are shown purported "Member Price" sale prices on nearly all of Defendant's Products:




4. However, Defendant's wine Products <u>never</u> sell at the purported strikethrough prices.

5. It is well-established that false "reference pricing" violates state and federal law. Nonetheless, Defendant employs inflated, fictitious reference prices for the sole purpose of

increasing its sales. Defendant engages in this deceptive practice to deceive consumers, including Plaintiff, into believing they are receiving a bargain on their online purchases to induce them into making a purchase they otherwise would not have made.

6. As a direct and proximate result of Defendant's false and misleading sales practices, Plaintiff and members of the Class, as defined herein, were induced into purchasing the Products under the false premise that they were of a higher grade, quality, or value than they actually were.

7. Plaintiff seeks relief in this action individually, and on behalf of all purchasers of the Products for violations of Oregon's Unlawful Trade Practices Act ("UTPA"), ORS 646.608(1)(j) and (ee), as well as fraud and unjust enrichment. Through this action, Plaintiff seeks to enjoin Defendant from its false and deceptive sales practices and seeks to obtain damages, restitution, injunctive relief, and reasonable attorney fees and costs.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiff, as well as most members of the proposed class, is a citizen of a state different from Defendant.

9. This Court has personal jurisdiction over the parties because Plaintiff resides in Oregon and submits to the jurisdiction of the Court, and because Defendant has, at all times relevant hereto, systematically and continually conducted business in Oregon, including within this District, and/or intentionally availed itself of the benefits and privileges of the Oregon consumer market through the promotion, marketing, and sale of its products and/or services to

residents within this District and throughout Oregon. Additionally, Plaintiff purchased the Products at issue from Defendant while in Oregon.

10. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Also, Plaintiff resides in this District and purchased Defendant's Products in this District. Moreover, Defendant systematically conducts business in this District and throughout the State of Oregon, and it distributed, advertised, and sold the Products to Plaintiff and Class Members in this State and District. The Portland Division is the appropriate venue because, as explained below, a substantial part of the events giving rise to the claims occurred in this division.

**PARTIES**

11. Plaintiff Nazzy Hassan is an individual consumer who, at all times material hereto, was a citizen and resident of Portland, Oregon. Plaintiff is a member of the "Safeway for U" rewards program that entitles her to purported discounts from Defendant.

12. Ms. Hassan purchased multiple purportedly discounted Products from one of Defendant's Safeway grocery stores, including but not limited to a 750 mL bottle of Barefoot Bubbly Brut Cuvee ("Plaintiff's Purchased Product" or, together with all of her purchased purportedly discounted products, "Plaintiff's Purchased Products") from on or around August 7, 2024, which, at the time, showed a strikethrough price of $18.39, with a purported "Member" price of $12.64 – representing a 31 percent discount.



[1]

[1] Screenshot from Plaintiff's order confirmation email.

13. Before purchasing Plaintiff's Purchased Products, Plaintiff reviewed information about the Products, including Defendant's representations that the Products were being offered at a discounted "sale" price, including but not limited to that the product was normally sold at higher "strikethrough" price (in the case of Plaintiff's Purchased Product, "$18.39") and that the original, non-sale price of the Products was higher than the advertised price. When purchasing the Products, Ms. Hassan also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representation and warranties by Defendant that the Products were ordinarily offered at a higher price.

14. Ms. Hassan relied on Defendant's false, misleading, and deceptive representations and warranties about the Products in making her decisions to purchase the Products. Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Products, or would not have paid as much for the Products, had she known Defendant's representations were not true. Defendant's representations about its Products are false and misleading because they induce consumers into believing that they are purchasing Products of a higher value and quality than they actually are.

15. Had Ms. Hassan known the truth—that the representations she relied upon in making her purchase were false, misleading, and deceptive—she would not have purchased the Products or would have paid less for the Products. Ms. Hassan did not receive the benefit of her bargain, because Defendant's Products were not of the represented quality and value. Ms. Hassan understood that each purchase involved a direct transaction between herself and Defendant, because the Products she purchased came with sales labeling, and other materials prepared by Defendant, including representations and warranties regarding the advertised claims.

16. Defendant Albertsons Companies, Inc. is an Idaho Corporation with its principal place of business in Boise, Idaho.

**BACKGROUND**

17. Defendant is the second-largest supermarket chain in North America after Kroger, and owns and operates, *inter alia*, the Safeway and Albertsons supermarket chains. Defendant markets and sells the Products at its Safeway and Albertsons grocery stores throughout Oregon and the United States.

**State And Federal Pricing Guidelines**

18. Federal and state courts have articulated the abuses that flow from false reference pricing practices. For example, the United States Court of Appeals for the Ninth Circuit explained: "Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

19. Oregon law prohibits false reference pricing practices such as those perpetrated by Defendant. Oregon's UTPA broadly prohibits: "Mak[ing] false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions." ORS 646.608(1)(j).

20. Oregon's UTPA explicitly prohibits reference price advertising which uses terms such as "regular," "sale," "originally," and "clearance" where the reference price was not in fact the retailer's own former price for the product. ORS 646.608(ee); ORS 646.885(1).

21. Oregon's UTPA also explicitly prohibits reference price advertising which uses terms such as "____ percent discount," "$____ discount," "____ percent off" and/or "$____ off" where the reference price was not in fact the retailer's own former price for the product. ORS 646.608(ee); ORS 646.885(2).

22. Defendant's advertised reference prices and discounts (including its percentage-off and strikethrough pricing) on its website violate Oregon law because Defendant's advertised reference prices are inflated and fictitious, and its advertised percentage-off and dollars-off discounts are false.

23. The Federal Trade Commission ("FTC") provides retailers with additional guidance as to permissible and unlawful sales tactics. *See* 16 C.F.R. § 233.

24. The FTC provides the following guidance on former price comparisons:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. **If, on the other hand, the former price being advertised is not bona fide but fictitious - for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.**

16 C.F.R. § 233.1(a) (emphasis added).

25. The FTC further provides that "[t]he advertiser should be especially careful [. . .] that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, **honestly and**

**in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based**." 16 C.F.R. § 233.1(b) (emphasis added).

26. The FTC also provides retailers with guidance as to retail price comparison:

> Another commonly used form of bargain advertising is to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area (the area in which he does business). This may be done either on a temporary or a permanent basis, but in either case **the advertised higher price must be based upon fact, and not be fictitious or misleading.** Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which substantial sales of the article are being made in the area - that is, a sufficient number of sales so that a consumer would consider a reduction from the price to represent a genuine bargain or saving.

16 C.F.R. § 233.2(a) (emphasis added).

27. Essentially, federal and state law provides that sales practices should be offered in good-faith and accurately reflect the price at which comparable products are sold in the market.

**<u>Defendant's Deceptive Sales Practices</u>**

28. Defendant sells its Products at both its brick-and-mortar Safeway and Albertson's grocery stores and through those chains' respective websites.

29. In an effort to increase sales, Defendant engages in a pervasive marketing scheme to artificially inflate the prices of its Products for the sole purpose of marking them at a discounted "sale" price for its members. Defendant is aware that consumers typically lack

material information about a product and often rely on information from sellers when making purchasing decisions, especially when a products quality or value is difficult to discern.[2]

30. Defendant deceives consumers through the utilization of a fictitious strikethrough reference price accompanied by a purported lower discounted "Member" price:




[3]

---

[2] *Information and Consumer Behavior*, Phillip Nelson, Journal of Political Economy 78, no. 2, pp. 311-312 (1970) ("Not only do consumers lack full information about the price of goods, but their information is probably even poorer about the quality variation of products simply because the latter information is more difficult to obtain.").

[3] https://www.safeway.com/shop/product-details.189100285.html (showing product current price and purported "Member Price" at Safeway located at 1030 SW Jefferson St., Portland, OR 97201)




[4]

31. Such representations are uniform for nearly all of the Products listed on Defendant's Safeway and Albertsons websites, and in its brick and mortar stores.

32. Upon information and belief, the strikethrough prices listed by Defendant are purely fictitious prices and not based on comparable sales offerings in the market nor are they the former price at which such Products were originally available for. Instead, this fictitious price is merely offered for the purpose of deceiving consumers into believing they are receiving a bargain for their purchases.

33. A simple examination of the Barefoot website, selling the same product, confirms this. Barefoot lists the **non-discounted** price of a 750 mL bottle of Bubbly Brut Cuvée at $11.99. Thus, unbelievably, Defendant actually upcharged Plaintiff while purporting to give her a discount.

[4] https://www.albertsons.com/shop/product-details.189100285.html (showing product current price and purported "Member Price" at Albertsons located 5415 SW Beaverton Hwy., Portland, OR 97221)




[5]

34. This deceptive tactic is not a mere one-off. As shown *supra*, nearly every wine product sold by Defendant is purportedly discounted for its members. For example, the Safeway store located at 1030 SW Jefferson Street in Portland, Oregon offers 991 wines in total. At the time of drafting of this Complaint, of those 991 wines, 868, or **87% of the wines Defendant is selling**, are sold at a purportedly discounted "Member Price."

---

[5] https://www.barefootwine.com/our-wines/bubbly/000000000210075103.html?position=3&gad_source=1



[6]

6 https://www.safeway.com/shop/aisles/wine-beer-spirits/wine.html?page=1&sort=&loc=2448



[7]

35. In short, Defendant's sales tactics are not offered in good faith and are made for the sole purpose of deceiving and inducing consumers into purchasing products they otherwise would not have purchased or would have paid less for had they known their true value.

36. None of Plaintiff's Purchased Products, like any of Defendant's purportedly "Member Price" Products, were ever sold at the strikethrough price advertised by Defendant.

37. Moreover, such a comparison price does not reflect those prices charged by others for the same merchandise in Defendant's trade area. Indeed, in many cases, the price charged for the very same products by the product's manufacturer is lower than even the purportedly discounted "Member Price" charged by Defendant.

---

[7] https://www.safeway.com/shop/aisles/wine-beer-spirits/wine.html?page=1&sort=&offerType=Y&loc=2448

38. The strikethrough prices and corresponding discounted "Member Price" listed by Defendant are entirely fabricated to give off the appearance of a bargain. Defendant intentionally misled Plaintiff, as well as other consumers, into believing that the Products are worth and ordinarily offered at a higher price.

39. Plaintiff reasonably relied on Defendant's representations that its Products were worth and ordinarily offered at a higher price. If Plaintiff had known the truth (*i.e.*, that the Products were not being offered at a discounted or sale "Member" price, but rather, at or even above the price at which it is typically offered), she would not have purchased Plaintiff's Purchased Products, or would have paid less for them.

40. Defendant's advertised false reference prices and advertised false discounts were material misrepresentations and inducements to Plaintiff's purchases.

41. Plaintiff was harmed as a direct and proximate result of Defendant's acts and omissions.

42. Defendant commits the same unfair and deceptive sales practices for all of its Products.

43. Plaintiff and members of the Class are not receiving the bargain or value that Defendant has misled them to believe.

## CLASS ACTION ALLEGATIONS

44. **Class Definition**: Plaintiff brings this action individually and on behalf of a class of similarly situated individuals as a class action pursuant to Rule 23(a) of the Federal Rules of Civil Procedure. The classes Plaintiff seeks to represent are defined as follows (collectively, the "Classes"):

(a) ***Nationwide Class*.** All consumers who purchased the Products during the applicable statute of limitations period (the "Class Period") in the United States.

(b) ***Oregon Subclass***. All class members who purchased the Products in Oregon.

45. Specifically excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

46. Plaintiff reserves the right to amend the definitions of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

47. ***Numerosity.*** Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, the Oregon Subclass comprises at least thousands of consumers throughout Oregon, and the Nationwide Class comprises at least hundreds of thousands of consumers throughout United States. The precise number of members of the Classes and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

48. ***Commonality and Predominance***. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual members of the Class and Subclass. Common legal and factual questions include, but are not limited to: (a) Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products; (b) Whether Defendant's misconduct set forth in this Complaint violates the statutes referenced herein; (c) Whether Defendant made false and/or misleading statements concerning the Products that were likely to deceive a reasonable

consumer and/or the public; (d) Whether Plaintiff and the Class and Subclass are entitled to injunctive relief; and (e) Whether Plaintiff and the Class and Subclass are entitled to damages under the same causes of action as the other Class Members.

49. ***Typicality.*** Plaintiff is a member of the Classes she seeks to represent. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Defendant's Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

50. ***Adequacy***. Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class members she seeks to represent; her consumer fraud claims are common to all other members of the Classes and she has a strong interest in vindicating her rights; and she has retained counsel competent and experienced in complex class action litigation and she intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Classes. The Class Members' interests will be fairly and adequately protected by Plaintiff and her counsel. Defendant has acted in a manner generally applicable to the Classes, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

51. ***Superiority***. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since individual joinder of all Class members is impracticable. Additionally, the expense and burden of individual litigation would make it difficult or impossible for the individual Class members to redress the wrongs done to them, especially given the costs and risks of litigation as compared to the benefits that may be attained. Even if the Class members could afford individualized litigation, the cost to the court system

would be substantial and individual actions would also present the potential for inconsistent or contradictory judgments. By contrast, a class action presents fewer management difficulties and provides the benefit of single adjudication and comprehensive supervision by a single forum.

52. Defendant has acted or failed to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the proposed Classes as a whole.

53. Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and members of the Class and Subclass and will likely retain the benefits of Defendant's wrongdoing.

54. Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

**COUNT I**

**Violations of Oregon's Unlawful Trade Practices Act,**
**ORS 646.605 to 646.656.**
**(*On Behalf of The Oregon Subclass*)**

55. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

56. Plaintiff brings this claim individually and on behalf of the members of the proposed Oregon Subclass against Defendant.

57. The Oregon Unfair Trade Practices Act, ORS 646.605 to 646.656, is Oregon's principal consumer protection statute. As the Supreme Court of Oregon has explained:

> The civil action authorized by ORS 646.638 is designed to encourage private enforcement of the prescribed standards of trade and commerce in aid of the act's public policies as much as to provide relief to the injured party. This is apparent from the section itself. It allows recovery of actual damages or $200, whichever is greater, plus punitive

> damages, costs, and attorney fees . . . . The evident purpose is to encourage private actions when the financial injury is too small to justify the expense of an ordinary lawsuit . . . . the legislature was concerned as much with devising sanctions for the prescribed standards of trade and commerce as with remedying private losses, and that such losses therefore should be viewed broadly. The private loss indeed may be so small that the common law likely would reject it as grounds for relief, yet it will support an action under the statute.

*Weigel v. Ron Tonkin Chevrolet Co.*, 298 Or. 127, 134–36, 690 P.2d 488, 493–94 (1984). A private plaintiff may also seek an injunction "as may be necessary to ensure cessation of unlawful trade practices." ORS 646.636.

58. Defendant is a "person," as defined by ORS 646.605(4).

59. Defendant is engaged in "trade" and "commerce" in Oregon by offering for sale goods with reference prices and discounts that directly or indirectly affect the people of Oregon, as defined by ORS 646.605(8).

60. The Products advertised and sold by Defendant with reference prices and discounts are "goods" that are or may be obtained primarily for personal, family or household purposes, as defined by ORS 646.605(6).

61. Plaintiff and the Oregon Subclass purchased the Products advertised by Defendant with reference prices and discounts for personal, family or household purposes.

62. The unlawful methods, acts and practices pled herein were committed in the course of Defendant's business. ORS 646.608(1).

63. Defendant's unlawful methods, acts and practices pled herein were "willful violations" of ORS 646.608 because Defendant knew or should have known that its conduct was a violation, as defined by ORS 646.605(10).

64. Defendant's representations of reference prices and discounts on its website are "advertisements" as defined by ORS 646.881(1).

65. Defendant's use of strikethrough reference prices and advertised discounts are "price comparisons" as defined by ORS 646.881(2).

66. Defendant's list prices are all either (1) representations of Defendant's own "former prices," or (2) representations of Defendant's "future price," as defined by ORS 646.885.

67. Defendant's methods, acts and practices, including Defendant's misrepresentations, active concealment and failures to disclose, violated and continue to violate the UTPA in ways including, but not limited to, the following:

(a) Defendant represented its goods had characteristics or qualities that the goods did not have (specifically, Defendant represented that the goods had a value equal to the reference price, when in fact they did not and instead had a much lower true value). ORS 646.608(1)(e);

(b) Defendant advertised its goods with intent not to provide the goods as advertised (specifically, Defendant represented that the goods had a value equal to the reference price, when in fact they did not and instead had a much lower true value). ORS 646.608(1)(i);

(c) Defendant made false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions. ORS 646.608(1)(j);

(d) Defendant engaged in price comparison advertising in violation of ORS 646.883(2) by failing to comply with ORS 646.608(1)(j) and ORS 646.608(4). ORS 646.608(ee);

(e) Defendant engaged in price comparison advertising in violation of ORS 646.885(1) by using terms such as "discount" and/or "sale" and providing strikethrough reference prices where the reference price was not in fact Defendant's own former price, or in the case of introductory advertisements, was not Defendant's future price. ORS 646.608(ee);

(f) Defendant engaged in price comparison advertising in violation of ORS 646.885(2) by using terms such as "____ % discount," "% Discount Running Now," and/or providing strikethrough reference prices where the reference price was not in fact Defendant's own former price, or in the case of introductory advertisements, was not Defendant's future price. ORS 646.608(ee); and

(g) Defendant engaged in other unfair or deceptive conduct in trade or commerce when, in violation of OAR 137-020-0010(6), it represented that goods were available for sale at an offering price that was less than a reference price and such reference price was not a price at which it had sold the good within the 30 days preceding the date of the listed reference price, was not a price that would be offered for sale in the future, was not a price that an

identified or identifiable competitor had recently sold the good in the regular course of business, and was not a price at which the goods were sold within the market area within the 30 days preceding the date of the listed reference price. ORS 646.608(1)(u); ORS 646.608(4).

68. With respect to omissions, Defendant at all relevant times had a duty to disclose the information in question because, inter alia:

(a) Defendant had exclusive knowledge of material information that was not known to Plaintiff and the Oregon Subclass;

(b) Defendant concealed material information from Plaintiff and the Oregon Subclass;

(c) Defendant made partial representations which were false and misleading absent the omitted information; and/or

69. Defendant's misrepresentations and nondisclosures deceive and have a tendency to deceive a reasonable consumer and the general public.

70. Defendant's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

71. Defendant engaged in the reckless or knowing use or employment of the unlawful methods, acts or practices alleged herein which have been declared unlawful by ORS 646.608.

72. As a direct, substantial and/or proximate result of Defendant's conduct, Plaintiff and Oregon Subclass members suffered ascertainable losses and injury to business or property.

73. Plaintiff and Oregon Subclass members would not have purchased the products at the prices they paid, if they had known that the advertised reference prices and discounts were false.

74. Plaintiff and Oregon Subclass members paid more than they otherwise would have paid for the Products they purchased from Defendant.

75. Defendant's false reference pricing scheme fraudulently increased demand from consumers. This fraud-on-the-market shifted the demand curve and enabled Defendant to charge higher prices than it otherwise could have charged.

76. The Products that Plaintiff and Oregon Subclass members purchased were not, in fact, worth as much as Defendant represented them to be worth.

77. Plaintiff seeks, on behalf of herself and the Oregon Subclass: (1) the greater of statutory damages of $200 or actual damages; (2) punitive damages; (3) appropriate equitable relief and/or restitution; and (4) attorney fees and costs. ORS 646.638(3); ORS 646.638(8).

78. The unlawful acts and omissions pled herein were, are, and continue to be part of a pattern or generalized course of conduct. Defendant's conduct is ongoing and is likely to continue and recur absent a permanent injunction. Accordingly, Plaintiff seeks an order enjoining Defendant from committing such unlawful practices. ORS 646.638(1); ORS 646.638(8)(c); ORS 646.636.

79. The balance of the equities favors the entry of permanent injunctive relief against Defendant. Plaintiff, the Oregon Subclass members and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant. Plaintiff, the Oregon Subclass members and the general public lack an adequate remedy at law. A permanent injunction against Defendant is in the public interest. Defendant's unlawful behavior is ongoing as of the date of the filing of this Complaint. If not enjoined by order of this Court, Defendant will or may continue to injure Plaintiff and Oregon consumers through the misconduct alleged herein. Absent the entry of a permanent injunction, Defendant's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, it is capable of repetition and is likely to reoccur.

80. Defendant's conduct has caused substantial injury to the general public. Plaintiff individually seeks public injunctive relief to protect the general public by putting an end to Defendant's false reference price advertising, false discounts and omissions.

81. This action was brought "within one year after the discovery of the unlawful method, act or practice." ORS 646.638(6).

82. The applicable limitations period is expansive and extends back decades based on the "discovery" rule explicitly provided for in the Oregon Unlawful Trade Practices Act, ORS 646.638(6). Defendant's unlawful false discounting practices have been pervasive—and at the core of its marketing plan—for as long as Defendant has operated within the State of Oregon.

83. Plaintiff and the Oregon Subclass members did not know, and could not have known, that these reference prices and discount representations were false. As the Oregon Supreme Court has explained, "In general terms, a cause of action does not accrue under the discovery rule until the claim has been discovered or, in the exercise of reasonable care, should

have been discovered." *FDIC v. Smith*, 328 Or. 420, 428, 980 P.2d 141 (1999). *See also Saenz v. Pittenger*, 78 Or. App. 207, 211–12, 715 P.2d 1126 (1986) (UTPA statute of limitations begins running when plaintiff knows or should have known of the allegedly unlawful conduct).

84. Almost all of the members of the Class are still not aware, at the time of the filing of this Complaint, of Defendant's false discount advertising scheme.

85. By Defendant's design, the false advertising scheme by its very nature is hidden and impossible for the typical consumer to discover. Consumers who shopped at Defendant's stores or on Defendant's website would have no way to know the true daily price histories and past selling prices for the products they viewed and purchased. Or that the advertised percentage-off and dollars-off savings were false. Consumers would have no way to know that Defendant's false discounting practices extended across all of Defendant's products. The bottom line is that the members of the Class have not discovered, and could not have reasonably discovered, Defendant's false discounting scheme.

86. Based on information and belief, almost all of the Class will learn of the scheme for the very first time upon court-ordered class notice in this case.

## COUNT II

**Fraud**
**(*On Behalf of The Classes*)**

87. Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

88. Plaintiff brings this claim individually and on behalf of the members of the Class and Oregon Subclass against Defendant.

89. As discussed above, Defendant misrepresented and failed to disclose material facts about its sales practices, including misrepresenting strikethrough reference prices, misrepresenting "Member Price" discounted prices for the Products, and failing to disclose that its "Member Prices" were at or above the normal prices at which the Products were typically sold, that its strikethrough prices were fictitious, and that these deceptive sales practices operated solely for the purpose of inducing consumers to make purchases they otherwise would not have made.

90. These misrepresentations and omissions made by Defendant, as described above, upon which Plaintiff and members of the Class and Oregon Subclass reasonably and justifiably relied, were intended to and actually did induce Plaintiff and members of the Class and Oregon Subclass to purchase the Products.

91. The fraudulent actions of Defendant caused damage to Plaintiff and members of the Class and Oregon Subclass, who are entitled to damages and other legal and equitable relief as a result.

**COUNT III**

**Unjust Enrichment / Restitution**
**(*On Behalf of The Classes*)**

92. Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

93. Plaintiff brings this claim individually and on behalf of the members of the Class and Oregon Subclass against Defendant.

94. "Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences. In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched. At the core

of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state." *In re Mercedes-Benz Tele Aid Contract Litig*., 257 F.R.D. 46, 58 (D.N.J. 2009), quoting *Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007).

95. Plaintiff and members of the Class and Oregon Subclass conferred a benefit on Defendant by purchasing the Products and by paying a price premium for them.

96. Defendant has knowledge of such benefits.

97. Defendant has been unjustly enriched in retaining the revenues derived from Class members' purchases of the Products, which retention under these circumstances is unjust and inequitable because it misrepresents that its Products are offered at a discounted "Member Price" and includes a fictitious strikethrough reference price higher than the purported "Member Price" of the Products, as described above. These misrepresentations caused injuries to Plaintiff and Class and Subclass Members because they would not have purchased the Products if the true facts regarding the value of the Products were known.

98. Because Defendant's retention of the non-gratuitous benefit conferred on them by Plaintiff and the Class and Subclass Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class and Subclass Members for their unjust enrichment, as ordered by the Court.

/ / /

/ / /

/ / /

/ / /

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Classes, and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

(b) For an order declaring Defendant's conduct violates the statutes and common laws referenced herein;

(c) For an order finding in favor of Plaintiff and the Classes and Subclass on all counts asserted herein;

(d) For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) For an order awarding Plaintiff and the Classes their reasonable attorney fees and expenses and costs of suit.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

DATED: September 16, 2024.

MARKOWITZ HERBOLD PC

*s/ Stanton R. Gallegos*
Stanton R. Gallegos, OSB #160091
StantonGallegos@MarkowitzHerbold.com
Jermaine F. Brown, OSB #073415
JermaineBrown@MarkowitzHerbold.com
*Attorneys for Plaintiff and the Putative Classes*

**BURSOR & FISHER, P.A.**
Neal J. Deckant *
ndeckant@bursor.com
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455

Stephen A. Beck *
sbeck@bursor.com
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512

Matthew Girardi *
mgirardi@bursor.com
Julian Diamond *
jdiamond@bursor.com
1330 Avenue of the Americas, Floor 32
New York, NY 10019
Telephone: (646) 837-7150

** Pro Hac Vice Application Forthcoming*
*Attorneys for Plaintiff and the Putative Classes*

2198214